Jerome F. SHOEMAKE, Plaintiff,

v.

MANSFIELD CITY SCHOOL DISTRICT BOARD OF EDUCATION, Defendant.

Case No. 1:13CV2505.

United States District Court,
N.D. Ohio,
Eastern Division.

Signed Nov. 20, 2014.

Jerome F. Shoemake, Mansfield, OH, pro se.

David Kane Smith, Maria Pearlmutter, Megan J. Bair, Sherrie Clayborne Massey, Britton, Smith, Peters & Kalail, Independence, OH, for Defendant.

## ORDER

CHRISTOPHER A. BOYKO, District Judge.

This matter comes before the Court upon the Objections (ECF DKT # 45) of Plaintiff, Jerome F. Shoemake, to Magistrate Judge Greg White's Report and Recommendation (ECF DKT # 44). For the following reasons, the Report and Recommendation is affirmed in all respects and the Objections are overruled.

## I. BACKGROUND

On November 15, 2013, the captioned case was referred to Magistrate Judge Greg White, pursuant to Local Rule 72.1, for pretrial supervision, including preparation of a report and recommendation regarding any case-dispositive motions. On September 15, 2014, the Magistrate Judge, among other matters, recommended that the Motion (ECF DKT # 31) of Defendant, Mansfield City School District Board of Education, for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction be granted in part and denied in part.

Plaintiff filed his *pro se* Complaint on November 12, 2013, alleging various federal and state law claims arising from the elimination of his position as a Special Education Specialist at the Mansfield City Schools. Specifically, the Complaint sets forth seven causes of action: (1) Retaliation and Unfair Labor Practices; (2) Retaliation; (3) Equal Contract Rights; (4) Due Process; (5) Disparate Impact re Nonteaching Staff in Pupil Services Department; (6) Misclassification of Nonteaching Employee; and (7) Statute of Limitations.

Although the Complaint is somewhat inartfully drawn, it appears to assert federal claims under 42 U.S.C. §§ 1981 and 1983; Title VII; and 18 U.S.C. § 1001. The Complaint also alleges violations of Ohio's employment anti-discrimination statutes, set forth at Ohio Revised Code Chapter 4112; various state laws and regulations governing teacher contract rights; and state collective bargaining laws. In addition, Plaintiff appears to ask this Court to reverse the October 17, 2013 decision of the Ohio Civil Rights Commission ("OCRC"), finding no probable cause for the Commission to issue an administrative complaint against the Mansfield City School District for unlawful discrimination. He also seeks: (1) a Writ of Mandamus to compel Defendant to reinstate him and provide back pay and related benefits; and (2) an Order "remand[ing] the case for consideration to the Office of the Attorney General for litigation on grounds defendant has caused irreconcilable harm against plaintiff under the Ohio and United States Constitution on counts of violations to race, equal contract rights, due process and equal protection guarantees, and violation of Title 18 U.S.C. § 1001 for willfully lying to a federal investigator." Finally, Plaintiff seeks declaratory and injunctive relief, compensatory damages and costs.

On April 4, 2014, Defendant filed a Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(c) and 12(b)(1).

Upon consideration of all the briefs and arguments, on September 15, 2014, the Magistrate Judge recommended that Defendant's Motion be granted with respect

to Plaintiff's claims under 42 U.S.C. § 1981; Title VII; and 18 U.S.C. § 1001, and Plaintiff's claims under 42 U.S.C. § 1983, that relate to his June 30, 2010 termination and any alleged acts of retaliation occurring before November 12, 2011. The Magistrate Judge recommended that Defendant's Motion be denied with respect to Plaintiff's § 1983 claims for retaliation occurring within two years of the filing of the Complaint (i.e., subsequent to November 12, 2011); Plaintiff's state law claims for discrimination, retaliation, hostile work environment and disparate impact; and Plaintiff's claims under Ohio Revised Code § 3319.171.

Further, the Magistrate Judge recommended that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be (1) granted with respect to Plaintiff's request that this Court review the October 2013 decision of the OCRC; and (2) denied without prejudice with respect to Plaintiff's claims under Ohio Revised Code Chapter 4117.

In addition, the Magistrate Judge recommended that Plaintiff's requests for a Writ of Mandamus and remand to the Office of the Ohio Attorney General be denied.

On September 26, 2014, Plaintiff filed his Objections (ECF DKT # 45), taking issue with four recommendations in the Magistrate Judge's Report.

## II. LAW AND ANALYSIS

### Standard of Review

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the District Court shall review *de novo* any finding or recommendation of the Magistrate's Report and Recommendation to which specific objection is made. A party who fails to file an objection waives the right to appeal. *U.S. v. Walters*, 638 F.2d 947, 950 (6th Cir.

1981). In *Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), the Supreme Court held: "[i]t does not appear that Congress intended to require district court review of a magistrate judge's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."

Local Rule 72.3(b) recites in pertinent part:

The District Judge to whom the case was assigned shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge.

■ (a). In his First Objection, Plaintiff insists that the Court cannot consider exhibits referenced by Defendant in its Motion for Judgment on the Pleadings. Plaintiff bases his Objection on the fact that, on January 9, 2014, the Magistrate Judge struck from the record Plaintiff's two "Replies" to Defendant's Answer, accompanied by hundreds of pages of exhibits, as unauthorized pleadings. Now, Defendant refers, in its Motion, to Exhibit A, item b, attached to Plaintiff's Complaint, which includes correspondence from the EEOC to Shoemake. Plaintiff contends the Exhibit was stricken, constitutes matters outside the pleadings and cannot be considered unless the Court converts Defendant's 12(c) Motion to a Motion for Summary Judgment.

Plaintiff is in error. First, the Magistrate Judge did not strike the exhibits attached to Plaintiff's Complaint; rather, the Magistrate Judge found fault with Plaintiff's unauthorized pleadings with voluminous attachments, identified as "Replies" to the Answer.

Second, the same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. Therefore, when a court is presented with a Rule 12(b)(6) or a Rule 12(c) motion, it may consider the complaint and any exhibits attached to it, public records, items appearing in the record of the case, and exhibits attached to the motion to dismiss, as long as they are referred to in the complaint and are central to the plaintiff's claims. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis added). *See also Henry v. Chesapeake Appalachia, LLC.*, 739 F.3d 909, 912 (6th Cir.2014); *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir.2008).

Therefore, the Magistrate Judge was justified in considering exhibits attached to, or referenced in, Plaintiff's Complaint; and there was no need for the Magistrate Judge to convert the 12(c) Motion to a summary judgment motion. Plaintiff's First Objection is overruled.

**(b).** In his Second Objection, Plaintiff asserts that Defendant District took inconsistent and varying positions before SERB, EEOC and this Court. Furthermore, Plaintiff insists that the doctrine of judicial estoppel bars Defendant from arguing one set of facts before one tribunal and another set of facts when it suits its advantage before another tribunal.

■ In his Report and Recommendation, the Magistrate Judge determined that the discrimination and retaliation claims filed with the EEOC were time-barred because Plaintiff filed the instant lawsuit two years after his receipt of the right-to-sue letter. Also, the Magistrate Judge declined to address the nature and scope of SERB's investigation into Plaintiff's charges until the facts are fully developed through the discovery process. Con-

sequently, these agency decisions are not reviewable.

■ Significantly, this is the first time that Plaintiff raises the doctrine of judicial estoppel. Failure to raise the issue before the Magistrate Judge constitutes waiver.

Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. *Murr v. United States*, 200 F.3d 895, 902 fn. 1 (6th Cir.2000), citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998).

For these reasons, Plaintiff's Second Objection is overruled.

■ **(c).** In Plaintiff's Third Objection, he repeats his allegations that Defendant and defense counsel engaged in dishonesty, fraud, deceit and/or misrepresentation, in violation of 18 U.S.C. § 1001. Section 1001 is a federal criminal statute. "There is no authority to allow a private citizen to institute a criminal action in a federal court; that power is vested exclusively in the executive branch." *See United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Williams v. Finnegan*, 2014 WL 2434590 at *2 (N.D.Ohio May 29, 2014). Consequently, there exists no independent, private cause of action for the alleged violation of 18 U.S.C. § 1001.

The Magistrate Judge, therefore, properly recommended dismissal of Plaintiff's claim under the criminal statute; so, Plaintiff's Third Objection is overruled.

**(d).** In his Complaint, Plaintiff makes a breach of contract claim, relating to the District's alleged failure to pay him for unused vacation and sick leave. Defen-

dant did not move for dismissal on that claim.

 In his Fourth Objection, Plaintiff argues that he is entitled to summary judgment on the breach of contract claim and that the District failed to carry its burden of proof. Plaintiff is incorrect on both counts. Plaintiff bears the burden of proof if he intends to recover for breach of contract. Also, simply because a party does not move for dismissal of a claim and reserves argument until fact discovery is completed does not mean the opposing party deserves summary judgment in his favor. In footnote # 18 of the Report and Recommendation, the Magistrate Judge construed the Complaint as asserting a breach of contract claim. However, the Magistrate Judge also noted that Defendant did not move for judgment in that respect.

Plaintiff's breach of contract claim, though not clearly drawn, remains viable and involves facts outside the pleadings. The Fourth Objection is overruled.

### III. CONCLUSION

For these reasons, Plaintiffs' Objections are overruled and the Magistrate Judge's Report and Recommendation (ECF DKT # 44) is adopted in its entirety.

**IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

GREG WHITE, United States Magistrate Judge.

On November 15, 2013, this matter was referred pursuant to Local Rule 72.1 for pretrial supervision, including the preparation of a report and recommendation regarding any case-dispositive motions. (Doc. No. 3.) Currently pending before the Court are (1) Defendant Mansfield City School District Board of Education's [1] Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 31); (2) Plaintiff Jerome Shoemake's "Motion for the Defendant to Withdraw Offending Claims Pursuant to Rule 11's 21–day Safe Harbor Period" (Doc. No. 37); (3) Defendant's Motion to Strike Plaintiff's "Motion for the Defendant to Withdraw Offending Claims" (Doc. No. 38); and, (4) Defendant's "Second Motion to Strike" (Doc. No. 40.)

For the following reasons, Defendant's Motions to Strike (Doc. Nos.38, 40) and Plaintiff's "Motion for Defendant to Withdraw Offending Claims" (Doc. No. 37) are DENIED. In addition, the Court recommends that Defendant's Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction be GRANTED IN PART and DENIED IN PART.

### I. Procedural Background

On November 12, 2013, Plaintiff Jerome Shoemake (hereinafter "Plaintiff" or "Shoemake") filed a *pro se* Complaint (Doc. No. 1) against the Mansfield City School District Board of Education [2] alleging various federal and state law claims arising from the elimination of his position as a Special Education Specialist at the Mansfield City Schools. Specifically, the Complaint asserts the following seven causes of action: (1) "Retaliation and Un-

---

1. Defendant Mansfield City School District Board of Education will hereinafter be referred to as either "Defendant" or "the Board."

2. The Complaint named the "Mansfield City Schools" as the sole defendant. During the

Case Management Conference conducted on January 10, 2014, the parties stipulated that the proper defendant in this action is the Mansfield City School District Board of Education. *See* Non–Document Order entered January 10, 2014.

fair Labor Practices;" (2) "Retaliation;" (3) "Equal Contract Rights;" (4) "Due Process;" (5) "Disparate Impact re Nonteaching Staff in Pupil Services Department;" (6) "Misclassification of Nonteaching Employee;" and, (7) "Statute of Limitations." (Doc. No. 1.)

Although the Complaint is not entirely clear, it appears to assert federal claims under 42 U.S.C. §§ 1981 and 1983; Title VII; and, 18 U.S.C. § 1001. The Complaint also alleges violations of Ohio's employment anti-discrimination statutes, set forth at Ohio Revised Code Chapter 4112; various state laws and regulations governing teacher contract rights; and, state collective bargaining laws. In addition, Plaintiff appears to ask this Court to reverse the October 17, 2013 decision of the Ohio Civil Rights Commission ("OCRC") finding no probable cause for the Commission to issue an administrative complaint against the Mansfield City School District for unlawful discrimination. (Doc. No. 1–1 at 6–7.) He also seeks (1) a writ of mandamus to compel Defendant to reinstate him and provide back pay and related benefits; and, (2) an order "remand[ing] the case for consideration to the Office of the Attorney General for litigation on grounds defendant has caused irreconcilable harm against plaintiff under the Ohio and United States Constitution on counts of violations to race, equal contract rights, due process and equal protection guarantees, and violation of Title 18 U.S.C. § 1001 for willfully lying to a federal investigator." (Doc. No. 1 at ¶ 189.) Finally, Plaintiff seeks declaratory and injunctive relief, compensatory damages, and costs. (Doc. No. 1 at p. 60).

After receiving an extension of time to respond, Defendant filed an Answer on December 17, 2013.[3] (Doc. No. 11.) Thereafter, and without leave of Court, Plaintiff filed two "Replies" to Defendant's Answer, which together comprised 638 pages of text and 176 pages of exhibits. (Doc. Nos. 13, 18.) On January 9, 2014, this Court issued an Order striking Plaintiff's "Replies" and accompanying Exhibits as unauthorized pleadings. (Doc. No. 19.)

On April 4, 2014, Defendant filed a Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(c) and 12(b)(1). (Doc. No. 31.) Plaintiff timely filed a Brief in Opposition (Doc. No. 35), to which Defendant replied (Doc. No. 36.) Plaintiff then filed a "Motion for Defendant to Withdraw Offending Claims," arguing (among other things) that Defendant had not timely filed its Reply Brief and should be sanctioned under Fed.R.Civ.P. 11. (Doc. No. 37.) Defendant moved to strike Plaintiff's motion on the grounds it was a "thinly-veiled" sur-reply which Plaintiff had not received authorization to file. (Doc. No. 38.) Plaintiff filed a Memorandum in Opposition (Doc. No. 39), which Defendant promptly moved to strike as another unauthorized sur-reply (Doc. No. 40.)

**II. Factual Allegations**

The Complaint contains the following allegations:

Plaintiff was hired as a teacher by the Mansfield City Schools in August 2000. (Doc. No. 1 at ¶ 14.) During the 2008–2009 and 2009–2010 school years, he was employed as a District Special Education Specialist. *Id.* at ¶¶ 15, 16. According to Plaintiff, a District Special Education Spe-

---

**3.** Both before and shortly after the filing of the Answer, Plaintiff filed three motions for default judgment based on Defendant's alleged failure to timely respond to the Complaint. (Doc. Nos. 8, 10, 12.) Each of these motions was denied. *See* Orders dated December 13, 2013, January 6, 2014, and January 9, 2014.

cialist "is a nonteaching position, which assists teachers in developing appropriate Individualized Education Programs ("IEPs") and in developing appropriate lesson plans and effective lesson preparations based on particular IEPs, amongst other responsibilities." *Id.* at ¶ 17. Plaintiff asserts he was an "exemplary employee" of the Mansfield City Schools for over ten years. *Id.* at ¶ 18. He states he received only positive performance reviews and never had a grievance or complaint filed against him. *Id.* at ¶¶ 19–20.

During the 2009–2010 school year, Defendant implemented an administrative reduction-in-force ("RIF") "for alleged financial reasons." *Id.* at ¶ 22. In May 2010, Plaintiff was notified his position was being eliminated as part of this RIF. *Id.* at ¶ 92. Plaintiff asserts the notification was untimely and, further, that Defendant violated state and federal law by failing to (1) "get input from plaintiff on the suspension policy;" (2) place him on a recall list; and/ or, (3) properly evaluate him or conduct a hearing prior to termination.[4] *Id.* at ¶¶ 23, 30. Plaintiff was officially terminated on June 30, 2010. *Id.* at ¶ 32.

Plaintiff, who is African–American, asserts the RIF was a "subterfuge to discriminate" against him. *Id.* at ¶ 36. He alleges that "defendant terminated plaintiff by way of job abolishment on June 30, 2010, while maintaining the job duties of the abolished position for a 'handpicked' junior white employee (Doug DeVito) to the present." *Id.* at ¶ 32. He claims statistical analysis of the positions eliminated in his department (Pupil Services) constitutes "proof that the observed disparity between black nonteaching staff retention and non-black nonteaching staff retention in Pupil Services at Mansfield City Schools (defendant) were not due to chance."[5] *Id.* at ¶ 149. He also claims Defendant terminated him not because of the RIF, but in retaliation for complaining to the Superintendent about an incident where "[t]he school district treasurer wore a Confederate soldier uniform on multiple occasions, which he should have known would be offensive and degrading to plaintiff and other black employees of southern heritage."[6] *Id.* at ¶¶ 42–43.

On July 10, 2010, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging racial discrimination, disability discrimination, and, retaliation. *Id.* at ¶ 57. Subsequently, on September 22, 2010, Plaintiff filed another Charge of Discrimination with the EEOC, alleging additional acts of retaliation. *Id.* at ¶ 58. The EEOC dismissed Plaintiff's

---

4. These allegations form the primary basis for Plaintiff's "Equal Contract Rights" and "Due Process" claims, set forth in Counts III and IV of the Complaint. (Doc. No. 1 at ¶¶ 88–93, 98, 102–122.)

5. At the time of the RIF, Plaintiff worked in the Pupil Services Department, which consisted of 44 non-teaching staff members. (Doc. No. 1 at ¶ 126.) He claims, of these 44 staff members, 40 were "non-blacks" and 4 were African–American. *Id.* at ¶ 127. Plaintiff claims the RIF abolished four positions from his department, three of which were held by African–Americans. *Id.* at ¶ 128. Employing a statistical analysis, he claims "the proportion of black nonteaching staff retained in

Pupil Services is more than two standard deviations below the proportion of the total nonteaching staff population (e.g., black plus non-black pupil services staff) retained." *Id.* at ¶ 135. Plaintiff also employed a "hypergeometric probability technique (e.g. Fisher's Exact Test)," to bolster his allegation that the RIF had a "disparate impact on black nonteaching staff in the defendant's department of Pupil Services." *Id.* at ¶¶ 140, 146.

6. This allegation also appears to form the basis of Plaintiff's claim that he was "subjected to an intimidating and hostile work environment on account of race while employed by defendant." *Id.* at ¶ 41.

charges on June 14, 2011. (Doc. No. 1–1 at 11–12.) Plaintiff thereafter requested reconsideration on the basis of statistical evidence which he believed demonstrated unlawful discrimination. *Id.* at 11. In a letter dated July 18, 2011, the EEOC advised Plaintiff that it had considered his statistical data but nonetheless determined that "our dismissal of your charge will remain in force." *Id.* at 12. This letter also stated as follows:

> You are reminded that the ninety (90) day time frame within which to file a lawsuit in federal district court is still in effect. The Dismissal and Notice of Rights was mailed to you on June 14, 2011. You must file your lawsuit by September 14, 2011 (or within 90 days of your receipt of the dismissal notice).

*Id.*[7]

In September 2012, Plaintiff filed an unfair labor practice charge with the State Employment Relations Board ("SERB") in which he claimed Defendant violated Ohio Revised Code § 4117.11(A)(3), (4) and (8) by discriminating against him. (Doc. No. 1 at ¶ 60; Doc. No. 1–1 at 9.) The SERB conducted an investigation and, on January 31, 2013, informed Plaintiff that "no probable cause existed to believe [Defendant] violated Ohio Revised Code § 4117.11." (Doc. No. 1–1 at 9.) Plaintiff also filed a Charge of Discrimination with the Ohio Civil Rights Commission ("OCRC"), alleging Defendant had engaged in an unlawful discriminatory practice. (Doc. No. 1 at ¶ 60; Doc. No. 1–1 at 6–7.) After conducting an investigation,

the OCRC informed Plaintiff on October 17, 2013 that it had found "no credible information supporting [his] allegations of unlawful activity." (Doc. No. 1–1 at 6.)

Plaintiff asserts Defendant retaliated against him for filing the above charges. (Doc. No. 1 at ¶ 37, 60–61.) He claims that, from June 2010 through 2013, "employees of similar or lower status than plaintiff who did not file EEOC, SERB, and OCRC complaints against defendant have been hired by defendant for positions instead of plaintiff." *Id.* at ¶ 62. Plaintiff further asserts that "[f]or example, defendant has refused to rehire plaintiff for positions for which he is qualified, including but not limited to positions [such] as tenured permanent building substitute teacher, non-tenured tutor, paraprofessional teacher aide, special education teacher, ALC teacher, and *et al.*" *Id.* at ¶ 61. *See also* Doc. No. 1 at ¶ 64. Plaintiff also claims Defendant refused to rehire him in retaliation for complaining about the alleged "multiple occasions" on which the school treasurer wore a Confederate soldier uniform. *Id.* at ¶ 42–43.

In addition, Plaintiff claims Defendant "lied to federal investigators" in violation of 18 U.S.C. § 1001 "by knowingly and willfully falsifying, concealing, and covering up by trick, material facts, and by making of false, fictitious, fraudulent statements both verbally and in writing, knowing the same to contain false, fictitious and fraudulent lies that plaintiff ... did not process [sic] sufficient credentials and/or was not similarly situated to continue in

---

**7.** The only EEOC charges clearly identified in the Complaint are those filed by Plaintiff in June and September 2010. (Doc. No. 1 at ¶¶ 57, 58.) As discussed *infra*, it is unclear but it appears Plaintiff may have filed additional EEOC charges in December 2010 and at some point in 2013. (Doc. No. 1 at ¶ 52, 96; Doc. No. 1–4 at 3; Doc. No. 35–1.) However, the Complaint does not contain any

clear factual allegations indicating that Plaintiff filed additional EEOC charges other than the June and September 2010 charges. Moreover, assuming additional charges were filed with the EEOC, the Complaint does not clearly plead when such charges were filed; the basis of those charges; or, when Plaintiff received right to sue letters from EEOC in response to any such charges.

employment with Mansfield City Schools akin to newly hired 'employment applicants' and former employees recalled in accordance with O.R.C. § 3319.171(B)(3) restoration clause." *Id.* at ¶ 71. He claims Defendant's fraudulent misrepresentations regarding his credentials and qualifications constitute evidence of "pretext to cover up a discriminatory decision" and, therefore, violate Title VII, 42 U.S.C. §§ 1981 and 1983, the Fourteenth Amendment; and, state law. *Id.* at ¶¶ 83–84.

Finally, Plaintiff asserts Defendant violated both state and federal law when it (1) failed to compensate him for 9.008 days of unused vacation leave and 101.5 days of accrued sick leave; and, (2) extended his work obligation to eleven months in violation of his 183–day contract. *Id.* at ¶ 46, 49. He asserts that Defendant's "adverse post employment decisions not to award deferred payment of earned benefits to JEROME F. SHOEMAKE, is an ongoing policy and pattern of discrimination of the same type continuing from outside the limitation period into the statutory limitation period under section 4112 of the Ohio Revised Code." *Id.* at ¶ 48. Plaintiff claims Defendant's conduct has been and "continues to be intentional and in wanton and reckless disregard to [his] rights and feelings," in violation of state law; Defendants' own policies; Title VII; and, 42 U.S.C. § 1981. *Id.* at ¶ 54.

## III. Analysis

### A. Plaintiff's "Motion for Defendant to Withdraw Offending Claims" and Defendant's Motions to Strike

As noted above, Plaintiff filed his Complaint in this Court on November 12, 2013. (Doc. No. 1.) Defendant answered on December 18, 2013 (Doc. No. 11), and filed its Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 31) on April 4, 2014. Plaintiff mailed his memorandum in opposition on April 21, 2014, and it was docketed by this Court on April 22, 2014. (Doc. No. 35). Defendant replied on May 6, 2014. (Doc. No. 36.)

Thereafter, on May 15, 2014, Plaintiff filed a "Motion for the Defendant to Withdraw Offending Claims Pursuant to Rule 11's 21–Day Safe Harbor Period." (Doc. No. 37.) Therein, Plaintiff argues (1) Defendant's Reply Brief in support of its Motion for Judgment on the Pleadings is untimely filed pursuant to Local Rule 7.1(e); (2) Defendant should be sanctioned under Fed.R.Civ.P. 11 for "present[ing] a motion for improper purposes" and "wrongfully deny[ing] factual allegations;" and, (3) Defendant's Motion should be converted to a motion for summary judgment because it inappropriately relies on matters outside the pleadings. (Doc. No. 37.) In advancing the second of these arguments, Plaintiff purports to provide specific examples of Defendant's allegedly meritless arguments and then responds, at length, with additional reasons why Defendant's Motion should be denied. *Id.* at 3–9.

In response, Defendant filed a Motion to Strike. (Doc. No. 38.) Defendant argues Plaintiff's Motion improperly alleges new facts and advances new legal theories, thus rendering it nothing more than a "thinly-veiled attempt to file" a surreply. Because Plaintiff failed to obtain prior authorization for filing a surreply as required by this Court's Case Management Conference ("CMC") Order (Doc. No. 21), Defendant maintains Plaintiff's Motion should be stricken in its entirety. Defendant also maintains its Reply Brief in support of its Motion for Judgment on the Pleadings is timely filed because Plaintiff mailed his Brief in Opposition on April 21, 2014 and, therefore, Defendant had three extra days for service. It also argues its Motion for Judgment on the Pleadings should not be

converted to a motion for summary judgment because it relied only on certain exhibits attached to Plaintiff's Complaint, which are not considered matters outside the pleadings. Finally, Defendant argues it should not be subject to sanctions under Rule 11 and notes Plaintiff failed to comply with that Rule's procedures.

Plaintiff then filed a "Memorandum in Support of Plaintiff's Motion for Sanctions against Defendant Pursuant to Rule 11." (Doc. No. 39.) He maintains Defendant should be sanctioned and its Answer stricken because it asserted fraudulent misstatements of fact and advanced meritless legal arguments.[8] Plaintiff also claims Defendant's Motion for Judgment on the Pleadings is unauthorized under the Federal Rules of Civil Procedure because it was filed after Defendant had already answered the Complaint. *Id.* at 14–15. Defendant responded by filing a "Second Motion to Strike." (Doc. No. 40.)

### 1. Defendant's Motions to Strike (Doc. Nos. 38, 40)

■ The Court declines to strike Plaintiff's Motion for Defendant to Withdraw Offending Claims (Doc. No. 37) and Memorandum in Support (Doc. No. 39). Although these filings do reargue the merits of Defendant's Motion for Judgment on the Pleadings to a certain extent, they also raise additional issues such as the timeliness of Defendant's Reply Brief; whether Defendant's Motion should be converted to a motion for summary judgment; and, whether Defendant is subject to sanctions under Rule 11. In this respect, then, the Court does not consider Plaintiff's Motion

and Memorandum to be entirely in the nature of an unauthorized sur-reply.

However, the Court will not consider Plaintiff's filings to the extent they reargue the factual and legal issues raised in Defendant's Motion for Judgment on the Pleadings. Plaintiff had the opportunity to, and did, file a Brief in Opposition to Defendant's Motion. Moreover, if he felt an additional response was necessary, Plaintiff could have sought leave from this Court to file a sur-reply. He did not do so. Plaintiff's attempt to reargue the merits of Defendant's Motion for Judgment on the Pleadings in the context of his motion for sanctions circumvents this Court's Order requiring prior authorization for the filing of sur-replies, and unfairly deprives Defendant of an opportunity to respond. Accordingly, while the Court will not strike Plaintiff's motion and memorandum in their entirety, to the extent they rehash arguments previously made or raise new arguments in opposition to Defendant's Motion for Judgment on the Pleadings they will not be considered.

### 2. Plaintiff's "Motion for Defendant to Withdraw Offending Claims" (Doc. No. 37)

In his Motion, Plaintiff first argues Defendant's Reply Brief is untimely under Local Rule 7.1(e). That Rule provides that:

Unless otherwise ordered by the Judicial Officer, the moving party may serve and file a reply memorandum in support of any dispositive motion within fourteen (14) days after service of the memorandum in opposition and in support of any non-dispositive motion within seven (7)

---

8. Specifically, Plaintiff asserts Defendant "perpetrates fraud on the court by pleading (1) 'Plaintiff had no teaching license;' (2) 'O.R.C. §§ 3319.02 and 3319.171 are not applicable to Plaintiff;' and, (3) 'Shoemake claims, for the first time, that [recalled employee Frederick] Boll had not continuing contract, was recalled to work in 2010, and was considered highly-qualified.' " (Doc. No. 39 at 14.)

days after service of the memorandum in opposition. If the moving party was served with the memorandum in opposition under Fed.R.Civ.P. 5(b)(2)(C), (D), (E) or (F), three days shall be added to the prescribed period as provided in Fed.R.Civ.P. 6(d).

Local Rule 7.1(e). Federal Rule of Civil Procedure 5(b)(2)(C) provides for service by "mailing [the filing] to the person's last known address—in which event service is complete upon mailing."

Here, the Certificate of Service attached to Plaintiff's Brief in Opposition to Defendant's Motion for Judgment on the Pleadings indicates it was mailed to Defendant by certified U.S. mail on April 21, 2014. (Doc. No. 35 at 20.) Thus, Defendant had seventeen days from that date to file its Reply; i.e. fourteen days plus an additional three days since Plaintiff's brief was served under Fed.R.Civ.P. 5(b)(2)(C). Thus, Defendant's Reply Brief was due on May 8, 2014. Because Defendant filed its Reply on May 6, 2014, it was timely filed under Local Rule 7.1(e). Plaintiff's argument to the contrary is without merit.

Plaintiff next argues Defendant's Motion for Judgment on the Pleadings should be converted to a motion for summary judgment because it relies on exhibits attached to the Complaint. Without citing any legal authority, Plaintiff summarily asserts that "[a] court cannot consider the exhibits attached to a Complaint without converting a Rule 12(B)(6) motion to a motion for summary judgment." (Doc. No. 37 at 10.)

Plaintiff is incorrect. The Sixth Circuit has held that, although consideration of a motion for judgment on the pleadings under Rule 12(b)(c) rests primarily upon the allegations in the complaint, "matters of public record, orders, items appearing in the record of the case, **and exhibits attached to the complaint**[ ] also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis added). *See also Henry v. Chesapeake Appalachia, L.L.C.,* 739 F.3d 909, 912 (6th Cir. 2014); *Barany–Snyder v. Weiner,* 539 F.3d 327, 332 (6th Cir.2008); *Eakins v. Reid,* 2012 WL 5451563 at *1 (N.D.Ohio Nov. 7, 2012). Thus, the Court may consider the exhibits attached to Plaintiff's Complaint without converting the Defendant's Motion to a motion for summary judgment.

■ Finally, Plaintiff argues Defendant should be sanctioned under Fed.R.Civ.P. 11 because it "has presented a motion for 'improper purposes,' the claims in the motion are not supported by the evidence, and the Defendant wrongfully denies factual allegations." (Doc. No. 37 at 3.) Defendant maintains it should not be sanctioned because (among other things) Plaintiff failed to comply with Rule 11's "safe harbor" provision. That provision, set forth in Rule 11(c)(1)(A), provides that:

> [a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate [this rule]. **It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.**

Fed.R.Civ.P. 11(c)(1)(A) (emphasis added). Under this provision, a party seeking Rule 11 sanctions must first serve its motion on the opposing party in accordance with Fed. R.Civ.P. 5. *See Ridder v. City of Springfield,* 109 F.3d 288, 294 (6th Cir.1997); *Jones v. TA Operating Corp.,* 2008 WL 495321 at *2 (E.D.Mich. Feb. 20, 2008). It

must then wait until 21 days after service before filing the motion for sanctions with the Court, thereby providing the non-moving party an opportunity to cure the alleged sanctionable conduct. *Ridder*, 109 F.3d at 294.

As another decision from this district has explained, Rule 11's "safe harbor" provision is a mandatory procedural requirement:

> The requirements of Rule 11 are "absolute" and the Sixth Circuit demands "strict adherence to the Rule's outlined procedure." *Ridder v. City of Springfield*, 109 F.3d 288, 296–97 (6th Cir. 1997). *See also Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 384 (6th Cir.1997); *Harnden v. Ford Motor Co.*, 408 F.Supp.2d 300, 308 (E.D.Mich.2004); *Conz v. Lady*, 2000 U.S. Dist. LEXIS 22137, at *18–19 (W.D.Mich. Jan. 25, 2000). This procedure includes both the form of the motion and the timing of its service and filing. *See, e.g., Ridder*, 109 F.3d at 293–97; *Harnden*, 408 F.Supp.2d at 308–09; *Conz*, 2000 U.S. Dist. LEXIS 22137, at *17–19; *Neighbors Concerned about Yacht Club Expansion v. Grosse Pointe Yacht Club*, 1999 WL 33656445, at *9–10, 1999 U.S. Dist. LEXIS 8646, at *29–30 (E.D.Mich. May 26, 1999).

Compliance with Rule 11's safe harbor provision is a mandatory procedural prerequisite to an award under the rule. *Morganroth*, 123 F.3d at 384. *See also Harnden*, 408 F.Supp.2d at 308; *Conz*, 2000 U.S. Dist. LEXIS 22137, at *20–21; *Neighbors*, 1999 WL 33656445, at *9, 1999 U.S. Dist. LEXIS 8646, at *28. Accordingly, the court does not consider the merits of a Rule 11 motion where the moving party fails to comply with the Rule's safe harbor requirements. *Morganroth*, 123 F.3d at 384. *See also Emery v. Mich. Dep't of Corr.*, 1999 U.S.

Dist. LEXIS 1400, at *12 (E.D.Mich. Jan. 13, 1999); *Thorne v. Micklow*, 1999 U.S. Dist. LEXIS 17109, at *23–24 (W.D.Mich. Oct. 22, 1999).

*Bosley v. WFMJ Television, Inc.*, 2006 WL 2474961 at *2–3 (N.D.Ohio Aug. 25, 2006). *See also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir.2002) ("This Court has expressly ruled that Rule 11 is unavailable where the moving party fails to serve a timely 'safe harbor' letter"); *Uszak v. Yellow Transportation, Inc.*, 343 Fed.Appx. 102, 107 (6th Cir.2009); *In re: Welding Fume Products Liability Litigation*, 2006 WL 1173960 at *23 (N.D.Ohio April 5, 2006); *Jones v. TA Operating Corp.*, 2008 WL 495321 at *2.

Here, Plaintiff failed to comply with Rule 11's mandatory 21–day safe harbor requirements. According to the certificate of service attached to his motion, Plaintiff served his motion for sanctions on Defendant on May 14, 2014 by certified U.S. mail. (Doc. No. 37–1 at 1.) The motion itself was filed in this Court the next day, on May 15, 2014. (Doc. No. 37.) Plaintiff does not assert that he served the motion on Defendant's counsel 21 days prior to filing it with this Court. Indeed, in his "Memorandum in Support of Plaintiff's Motion for Sanctions Against Defendant Pursuant to Rule 11," Plaintiff acknowledges he sent the motion to defendant's counsel on May 14, 2014. (Doc. No. 39 at 7.) As noted above, Rule 11 requires that a party moving for sanctions first serve its motion on opposing counsel in accordance with Rule 5, and then wait 21 days after service *before* filing it with the Court. *See* Rule 11(c)(1)(A); *Ridder*, 109 F.3d at 294; *Jones*, 2008 WL 495321 at *2. Plaintiff herein clearly failed to do so and, therefore, this Court cannot consider the merits of his motion or award sanctions as a matter of law. *See First Bank of Mariet-*

*ta,* 307 F.3d at 511; *Ridder,* 109 F.3d at 297.

Accordingly, and for all the reasons set forth above, Plaintiff's "Motion for the Defendant to Withdraw Offending Claims Pursuant to Rule 11's 21–day Safe Harbor Period" is denied.

## B. Defendant's Motion for Judgment on the Pleadings

### 1. Standard of Review

Pursuant to Fed.R.Civ.P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 581 (6th Cir.2007) (internal citation and quotation marks omitted).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings. *See Roth v. Guzman,* 650 F.3d 603, 605 (6th Cir. 2011). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009) (*quoting in part Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level— "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) (*quoting in part Twombly,* 550 U.S. at 555–556, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir.2009) (*quoting in part Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (*quoting Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

### 2. Federal Claims
#### a. 42 U.S.C. § 1981

In the Complaint, Plaintiff asserts a variety of discrimination and retaliation

claims pursuant to 42 U.S.C. § 1981. Defendant maintains Plaintiff's § 1981 claims should be dismissed because they are not cognizable against public municipal entities as a matter of law. (Doc. No. 31 at 21.) Rather, Defendant argues that "Section 1983 remains the exclusive federal remedy for Section 1981 violations by state entities or political subdivisions." *Id.* Because Defendant is a political subdivision, it argues it is not subject to liability under § 1981 and Plaintiff's claims must be dismissed.

 "Section 1981 prohibits racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir.2012) (citing *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976)). Specifically, that section provides as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. Interpreting the above, the Sixth Circuit has held that § 1981 does not provide a private cause of action against governmental entities or state actors in their official or individual capacities.[9] *See Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir.2008); *McCormick*, 693 F.3d at 662. Rather, " 'the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units.' " *Arendale*, 519 F.3d at 599 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Relying on this authority, district courts within this Circuit have consistently dismissed § 1981 claims brought against state and local governmental entities. *See e.g. Wallace v. The MetroHealth System*, 2013 WL 5739705 at *9–10 (N.D.Ohio Oct. 22, 2013); *Chung v. Berkman*, 2013 WL 4523513 at *5 (N.D.Ohio Aug. 26, 2013); *Garceau v. City of Flint*, 2013 WL 5954493 at *4–5 (E.D.Mich. Nov. 7, 2013); *Jones v. City of Franklin*, 2010 WL 2507771 at *12 (M.D.Tenn. June 18, 2010).

Here, Defendant asserts it is a political subdivision [10] and, therefore, Plaintiff may not maintain a § 1981 claim against it as a

**9.** In *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court found that § 1983 provided the exclusive federal damages remedy for a claim against a state actor accused of violating rights secured by § 1981. Two years after *Jett* was decided, Congress passed the Civil Rights Act of 1991, which amended § 1981 to provide (in relevant part) that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." This amendment resulted in a split among the circuits regarding whether *Jett* remained good law. In *Arendale*, the Sixth Circuit determined *Jett* was not overruled and remained binding authority. *Arendale*, 519 F.3d at 598–99. Four years later, in

*McCormick*, the Sixth Circuit reaffirmed that *Jett* remains binding authority in this Circuit and found that a plaintiff cannot use § 1981 to sue a state actor in his or her official or individual capacity. *McCormick*, 693 F.3d at 660–661.

**10.** Plaintiff does not contest Defendant's statement that it is a political subdivision. The Court notes that Ohio law defines a "political subdivision" as "a municipal corporation, township, county, **school district,** or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Ohio Rev. Code § 2744.01(F) (emphasis added).

matter of law. The Court agrees. Pursuant to *Arendale,* the Court finds the exclusive federal remedy for Plaintiff's § 1981 claims against Defendant is 42 U.S.C. § 1983. Accordingly, the Court recommends that Plaintiff's § 1981 claims be dismissed.

### b. Title VII

Defendant argues Plaintiff's Title VII discrimination and retaliation claims should be dismissed as time-barred. It notes that (1) Plaintiff was terminated on June 30, 2010; (2) he filed a charge of employment discrimination with the EEOC on July 13, 2010; and, (3) the EEOC dismissed Plaintiff's charge and mailed a right to sue letter to his home on June 14, 2011. Thus, Defendant maintains, Plaintiff had ninety days from June 14, 2011 (or until September 14, 2011) to file his Title VII claims in this Court. Because the instant Complaint was not filed until over two years later, on November 12, 2013, Defendant argues Plaintiff's Title VII claims are time-barred. (Doc. No. 31 at 18.)

 It is well-established that a plaintiff must file a Title VII civil action in federal court within ninety days after receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1); [11] *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 557 (6th Cir.2000); *Hollimon v. Shelby County Gov't,* 325 Fed.Appx. 406, 408–09 (6th Cir.

2009). "The Sixth Circuit has resolved that notice is *given,* and hence the ninety-day limitations term begins running, on the fifth day following the EEOC's mailing of a [right-to-sue] notification to the claimant's record residential address, by virtue of a presumption of actual delivery and receipt within that five-day duration, unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period." *Graham–Humphreys,* 209 F.3d at 557 (emphasis in original).

 · As the Sixth Circuit has explained, Title VII's ninety-day statutory limit is strictly enforced:

> The federal courts have strictly enforced Title VII's ninety-day statutory limit. In *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam), an opinion that dismissed a *pro se* Title VII complaint filed outside of limitations, the Supreme Court stated that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Id.* at 152, 104 S.Ct. 1723. In *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), the Court further explained that "experience teaches that strict adherence to the procedural requirements specified

---

**11.** Specifically, § 2000e–5(f)(1) provides that: "If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a concil-

iation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."

by the legislature is the best guarantee of evenhanded administration of the law." *Id.* at 826, 100 S.Ct. 2486. *See also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). *Graham–Humphreys,* 209 F.3d at 557. *See also Gui v. Inkster School Districts,* 2013 WL 1282020 at *3 (E.D.Mich. March 27, 2013); *Getachew v. Central Ohio Transit Authority,* 2012 WL 1575997 at *2 (S.D.Ohio May 3, 2012); *Williams v. Steak 'N Shake,* 2011 WL 3627165 at *2 (N.D.Ohio Aug. 17, 2011); *Lacheta v. Madison County Hospital,* 2009 WL 3515378 at *1 (S.D.Ohio Oct. 28, 2009). "As such, dismissal of a complaint filed after ninety days of receiving the EEOC right-to-sue letter is appropriate even where a plaintiff proceeds pro se because the plaintiff still has 'a responsibility to meet the requirements of the law.'" *Williams,* 2011 WL 3627165 at *2 (quoting *Lomax v. Sears, Roebuck & Co.,* 2000 WL 1888715 at *6 (6th Cir. Dec. 19, 2000)).

Here, Plaintiff was terminated on June 30, 2010 and filed a charge of discrimination with the EEOC on July 10, 2010. *Id.* at ¶ 32, 57. Plaintiff does not attach a copy of this charge as an exhibit to his Complaint, but he alleges that it asserted claims of "race discrimination, disability discrimination, and retaliation." *Id.* at ¶ 57. On September 22, 2010, Plaintiff filed "an additional Charge of Discrimination with the EEOC, alleging additional retaliation."[12] *Id.* at ¶ 58. According to an Exhibit attached to the Complaint, the EEOC mailed a "Dismissal and Notice of Rights" to Plaintiff on June 14, 2011. (Doc. No. 1–1 at 11–12.)

On or about July 3, 2011, the EEOC received a request for reconsideration, in which Plaintiff argued the Commission had failed to consider relevant statistical evidence and/or had "misinterpreted the law." *Id.* at 11. On July 18, 2011, the EEOC mailed a letter to Plaintiff in which it denied his request for reconsideration and affirmed the original dismissal of his charge. *Id.* at 12. Therein, the EEOC reminded Plaintiff of the ninety-day time limit for filing federal suit, as follows:

> You are reminded that the ninety (90) day time frame within which to file a lawsuit in federal district court is still in effect. The Dismissal and Notice of Rights was mailed to you on June 14, 2011. You must file your lawsuit by September 14, 2011 (or within 90 days of your receipt of the dismissal notice).

*Id.* at 12.

As noted above, the Sixth Circuit has determined the ninety-day time limit begins to run on the fifth day following the EEOC's mailing of a right-to-sue letter to the claimant's residential address, "unless the plaintiff rebuts that presumption with proof that he or she did not *receive* notification within that period." *Graham–Humphreys,* 209 F.3d at 557. Here, Plaintiff makes no argument regarding receipt of the notification within five days after the EEOC mailed the June 14, 2011 Dismissal and Notice of Rights; i.e., by Monday, June 20, 2011. Thus, the ninety-day time limit began to run on June 20, 2011 and expired on Monday, September 19, 2011. Plaintiff did not file his Complaint until over two years later, on November 12, 2013.[13] (Doc. No. 1.)

---

**12.** According to a July 18, 2011 letter from the EEOC to Plaintiff (a copy of which is attached to the Complaint), it appears Plaintiff filed a third EEOC charge on December 6, 2010. (Doc. No. 1–1 at 11–12.) Plaintiff does not clearly reference this charge in the body of his Complaint, or explain what he alleged therein. Nor does he attach a copy of this (or any) EEOC charge as an exhibit to his Complaint.

**13.** District courts within this Circuit have held that the ninety day time limit is not

In his Brief in Opposition, Plaintiff states he received another right-to-sue letter from the EEOC on April 9, 2014 and attaches a copy of that letter to his Brief as an Exhibit. (Doc. No. 35 at 5; Doc. No. 35–1.) He then argues, summarily and without any explanation, that "[t]herefore, Plaintiff has standing to file in Federal or State court under Federal Law against Mansfield City School District Board of Education." (Doc. No. 35 at 5.)

Giving the *pro se* Plaintiff every benefit of the doubt, the Court construes Plaintiff's reference to the April 9, 2014 EEOC letter as arguing this right-to-sue letter renders his federal claims timely. The Court rejects this argument. The Complaint does not clearly allege that Plaintiff filed an EEOC charge subsequent to his June and September 2010 charges, or (assuming he did so) the basis of such subsequent charges. The EEOC's April 9, 2014 "Dismissal and Notice of Rights" letter also does not indicate the basis of Plaintiff's charge, stating only that "[t]he EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge." (Doc. No. 35–1 at 1.) This appears to be a reference to the OCRC's October 17, 2013 Letter of Determination finding no probable cause to issue an administrative complaint accusing Defendant of an unlawful discriminatory practice. This Letter, which is attached as an Exhibit to the Complaint, rejected Plaintiff's charge as follows:

> After receiving the charge, the Commission conducted an investigation into Charging Party's allegation against Respondent. During its investigation, the Commission gathered relevant information. Based upon its investigation, the Commission found no information or records that would raise an inference that Respondent unlawfully discriminated against Charging Party. Specifically, the Commission found that Charging Party's layoff issue is untimely and has been addressed in a prior charge. In addition, Charging Party was not denied hire to the positions he sought due to his race or in retaliation for filing prior charges with the Commission. The Charging Party was either unqualified or failed to contact Respondent for possible employment opportunities. This is a legitimate nondiscriminatory reason. The Commission finds no credible information supporting Charging Party's allegation of unlawful activity.

(Doc. No. 1–1 at 6.)

▮ Based on the above, and in the absence of any allegations from Plaintiff to the contrary, it appears the charge that formed the basis of the EEOC's April 2014 right-to-sue letter reiterated the same charges of discrimination and retaliation that formed the basis of his June and September 2010 charges. The Sixth Circuit has held that "Title VII does not allow a plaintiff who misses the 90–day window to resurrect the same claims by including them in a new EEOC charge, restarting the process and resetting the limitations clock." *Hollimon*, 325 Fed.Appx. at 409–10. *See also Adams v. Tenn. Dep't of Fin. & Admin.*, 179 Fed.Appx. 266, 271 (6th Cir.2006). Thus, the fact that Plaintiff

---

tolled by a request for reconsideration. *See e.g. Johnson v. Int'l Union (UAW) AFL–CIO*, 2014 WL 2931825 at *3 (E.D.Mich. April 3, 2014). Therefore, the Court finds the ninety-day time limit herein ran from the EEOC's June 14, 2011 right to sue letter, rather than its July 18, 2011 letter denying Plaintiff's re-

quest for reconsideration. However, even if the ninety day time limit were to commence five days from the mailing of the July 18, 2011 letter (i.e., on Saturday, July 23, 2011), it would have expired on Monday, October 17, 2011. Again, well before Plaintiff filed his November 12, 2013 Complaint.

may have filed a later EEOC charge that restated his discrimination and retaliation claims does not serve to toll or restart his ninety-day filing time limit.

In a further attempt to evade the ninety-day filing mandate, Plaintiff also appears to argue his Title VII claims are, in fact, brought pursuant to 42 U.S.C. § 1981 and therefore subject to that statute's period of limitations, which he claims is four years. (Doc. No. 1 at ¶¶ 192–197.) The Court rejects this argument. As addressed above, § 1981 does not provide a private cause of action against governmental entities. *See Arendale,* 519 F.3d at 598–99. Plaintiff cites no authority indicating that, despite this well-established rule of law, § 1981 may nevertheless provide the limitations period for his Title VII claims. Plaintiff's argument on this issue is wholly without merit.

■■ Finally, the Court notes the Complaint alleges Defendant has "engaged in a 'continuing violation' ... because said Defendant has committed constitutional impermissible acts of discrimination, from outside the limitations period into the statutory limitations period." (Doc. No. 1 at ¶¶ 2, 40, 48, 168.) While the continuing violation doctrine may serve to toll the statutory period within which to file a complaint with the EEOC, the Sixth Circuit has expressly held that this doctrine "does not relieve a plaintiff of the need to file an action within 90 days of receiving the right to sue letter." *Wade v. Knoxville Utilities Bd.,* 259 F.3d 452, 461 (6th Cir.2001). *See also Clark v. Nissan Motor Mfg. Corp. U.S.A.,* 1998 WL 786892 at *5 (6th Cir. Oct. 26, 1998); *Austion v. City of Clarks-*

*ville,* 244 Fed.Appx. 639, 648–49 (6th Cir. 2007); *Hollowell v. Michigan Consolidated Gas Company,* 18 Fed.Appx. 332, 337–38 (6th Cir.2001); *Gay v. Teleflex Automotive,* 2008 WL 896946 at *6 (N.D.Ohio March 28, 2008). Thus, the Court finds Plaintiff's failure to file the instant action within ninety-days of receiving his right-to-sue letter cannot be excused by the continuing violation doctrine.

Accordingly, and for all the above reasons, the Court finds Plaintiff filed his Complaint well beyond the ninety-day period allowed in 42 U.S.C. § 2000e–5(f)(1) and, therefore, recommends his Title VII claims be dismissed as time barred.[14]

### c. 42 U.S.C. § 1983

■■ To maintain a claim under § 1983, a plaintiff must establish that he was deprived of a right secured by the Constitution or the laws of the United States, and that the deprivation was caused by a person acting under color of state law. *See West·v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Simescu v. Emmet County Dep't of Soc. Services,* 942 F.2d 372, 374 (6th Cir.1991). Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Baker,* 443 U.S. at 140, 99 S.Ct. 2689.

The Complaint is not a model of clarity, but it appears Plaintiff's § 1983 claims fall

---

**14.** The Court notes the ninety-day filing requirement for Title VII claims is not a jurisdictional requirement and is subject to waiver, estoppel, and equitable tolling. *See Truitt v. County of Wayne,* 148 F.3d 644, 646–647 (6th Cir.1998); *Graham–Humphreys,* 209

F.3d at 560–561. Plaintiff does not argue, however, that the doctrines of waiver, estoppel, or equitable tolling are applicable in this case. Therefore, the Court does not address these doctrines.

into two general categories. The first consists of alleged due process violations arising out of Plaintiff's termination on June 30, 2010. This appears to include Defendant's decision to terminate Plaintiff as part of the RIF, as well as the alleged failure to accord Plaintiff certain due process protections prior to termination. *See e.g.* Doc. No. 1 at ¶¶ 5, 89, 117–120. The second category consists of Plaintiff's claim that Defendant violated his constitutional rights by failing to recall or restore him to employment in retaliation for (1) filing charges with the EEOC, OCRC, and SERB; and, (2) complaining about multiple incidents in which the school treasurer allegedly wore a Confederate soldier uniform. *See e.g.* Doc. No. 1 at ¶¶ 42–43, 60–85, 87.[15]

Defendant argues Plaintiff's § 1983 claims are time-barred because he was terminated on June 30, 2010 but failed to file his Complaint until over three years later, on November 12, 2013. (Doc. No. 31 at 18.) Defendant further maintains Plaintiff fails to plausibly allege continuing violations under § 1983 because the decision not to recall or rehire him "is a discrete—not an ongoing—act [and therefore] cannot serve to extend the statute of limitations." *Id.* at 19. Accordingly, Defendant maintains this Court should dismiss "all claims

referencing Section 1983 [or] Due Process. . . ." *Id.*

■■■ The Sixth Circuit has repeatedly held that Ohio's two year statute of limitations for personal injury actions applies to § 1983 claims arising in Ohio. *See LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1105 (6th Cir.1995); *Browning v. Pendleton,* 869 F.2d 989, 992 (6th Cir.1989) (*en banc*); *Huntsman v. Perry Local Schools Board of Education,* 379 Fed.Appx. 456, 461 (6th Cir.2010). *See also Getachew v. Central Ohio Transit Authority,* 2012 WL 1575997 at *2 (S.D.Ohio May 3, 2012). Here, it is undisputed that Plaintiff was terminated on June 30, 2010. (Doc. No. 1 at ¶ 32.) Because he did not file his Complaint until November 12, 2013, any § 1983 claims relating to his termination (or the alleged failure to accord him certain due process protections prior to termination) are time-barred and subject to dismissal as a matter of law. Moreover, any alleged acts of retaliation that occurred before November 12, 2011 (i.e., two years prior to the filing of the Complaint) are similarly time-barred.

■■■ However, Plaintiff claims that Defendant continues to retaliate against him by failing to either recall, restore, or rehire him for employment.[16] Specifically,

---

**15.** Defendant appears to construe the Complaint as raising § 1983 claims solely on the basis of alleged due process violations. However, Count II of the Complaint (entitled "Retaliation") clearly alleges § 1983 claims for retaliation based on Defendant's alleged failure to recall or rehire him because he filed administrative charges and/or complained about the Confederate soldier uniform incidents. *See* Doc. No. 1 at ¶¶ 84, 85. The Court questions whether such claims may be preempted by Title VII. *See Toth v. City of Toledo,* 480 Fed.Appx. 827, 831 (6th Cir. 2012); *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984). However, Defendant does not argue this issue and the Court will not address it *sua sponte.*

**16.** "To establish an unconstitutional retaliation claim under § 1983, a plaintiff has the burden to prove: (1) that there was constitutionally protected conduct; (2) an adverse action by defendant sufficient to deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between the first and second elements, that is, the adverse action was motivated at least in part by plaintiff's protected conduct." *Santino v. Columbus Public Schools,* 833 F.Supp.2d 780, 795 (S.D.Ohio 2011) (citing *Eckerman v. Tennessee Dep't of Safety,* 636 F.3d 202, 207 (6th Cir.2010)).

the Complaint alleges Plaintiff "had eligibility re '24 month recall' by virtue of his being impacted by a reduction in force under O.R.C. § 3319.171(3)(B)" but "was treated differently on account of filing discrimination charges against defendant and was never recalled for positions he could perform due to retaliation for filing various discrimination charges over said 24–month recall period." *Id.* at ¶ 37. He states he "was not recalled to work while OTHER employees—including newly hired employee applicants—of a similar or lower status than plaintiff have been hired and/or made-whole under defendant's suspension restoration policy." *Id.* at ¶ 39. Plaintiff further claims Defendant "has refused to rehire plaintiff for positions for which he is qualified, including but not limited to positions [such] as tenured permanent building substitute teacher, non-tenured tutor, paraprofessional teacher aide, special education teacher, ALC teacher, and *et al.* during 2010, 2011, 2012, and 2013." *Id.* at ¶ 61. He states that "candidates with similar credentials have been selected as special education teachers, tutors, paraprofessional teacher aides and *et al.* from 2010–2013." *Id.* at ¶ 70. The Complaint then identifies ten specific individuals whom Plaintiff claims were hired by Defendant for these positions between 2010 and 2013. *Id.* at ¶ 70.

Based on the above, Plaintiff alleges Defendant "is *currently in retaliation* against plaintiff on account of his filing with the EEOC, State Employment Relations Board (SERB) September 2012, and Ohio Civil Rights Commission (OCRC) complaint February 15, 2013." *Id.* at ¶ 60. He further claims Defendant "foster[s] retaliatory actions towards plaintiff with regard to continued job opportunities as an applicant for hire" because he complained about "multiple occasions" on which the school district treasurer wore a Confederate soldier uniform. *Id.* at ¶ 42–43.

Defendant argues, summarily, that "[f]ailure to recall, like failure to hire, is a discrete act, not an ongoing violation" and, therefore, Plaintiff had until June 30, 2012 to file suit for Defendant's alleged failure to recall him. (Doc. No. 31 at 19.) Defendant, however, cites no legal authority for this particular proposition. Moreover, the nature and timing of Defendant's recall decisions are not evident from the face of the pleadings. Defendant does not address, for example, Plaintiff's claim that he was subject to retaliation during an alleged "24 month recall period." Accepting as true Plaintiff's allegations that there was, in fact, a 24 month recall period applicable to him,[17] it would have presumably expired in June 2012, which is within § 1983's two year statute of limitations period.

Thus, the Court is unable to determine at this stage of the litigation that all of Plaintiff's § 1983 claims for retaliation are time-barred. The Court therefore recommends Defendant's Motion for Judgment on the Pleadings be denied with respect to these claims.

#### d. 18 U.S.C. § 1001

Plaintiff also claims Defendant "lied to federal investigators" in violation of 18 U.S.C. § 1001 when it allegedly told the

---

17. In connection with Plaintiff's state law claims, Defendant argues Plaintiff was non-tenured and, therefore, had no recall rights under Ohio law. (Doc. No. 31 at 28.) Defendant also argues Plaintiff was not qualified for any of the teaching positions he sought. *Id.* at 25. Plaintiff maintains he did, in fact, have restoration rights under Defendant's administrative suspension policy. He further argues, vehemently, that he was in fact qualified and directs the Court's attention to several licenses attached as exhibits to his Complaint. The Court finds that there are factual issues surrounding these issues that are not properly resolved on a motion for judgment on the pleadings.

EEOC that he did not possess "sufficient credentials and/or was not similarly situated to continue in employment with Mansfield City Schools akin to newly hired 'employment applicants' and former employees recalled in accordance with O.R.C. § 3319.171(B)(3) restoration clause." (Doc. No. 1 at ¶ 71.)

To the extent Plaintiff intends to assert a cause of action under 18 U.S.C. § 1001, the Court recommends it be dismissed. It is well-established that Section 1001 is a federal criminal statute and does not provide a private cause of action. *See Massey v. Bank of Edmondson County*, 49 Fed. Appx. 604 (6th Cir.2002); *Williams v. Finnegan*, 2014 WL 2434590 at *2 (N.D.Ohio May 29, 2014); *Minnesota Life Ins. Co. v. Cole*, 2013 WL 1858132 at *4 (N.D.Ohio May 2, 2013); *DuBose v. Kasich*, 2013 WL 1711610 at *1 (S.D.Ohio April 19, 2013); *Kelly v. City of New Philadelphia*, 2011 WL 3705151 at *2 (N.D.Ohio Aug. 22, 2011); *Nicole Energy Services, Inc. v. McClatchey*, 2010 WL 55718 at *6 (S.D.Ohio Jan. 4, 2010).

Thus, to the extent the Complaint could be construed as asserting a claim under 18 U.S.C. § 1001, the Court recommends such claim be dismissed.

### 3. State Law Claims

#### a. Discrimination under Ohio Revised Code 4112.02

Defendant argues it is entitled to judgment on the pleadings with respect to Plaintiff's claims of employment discrimination under Ohio Revised Code § 4112.02 because Plaintiff (1) does not allege he was "replaced" after his position was terminated as part of the RIF; and, (2) fails to allege direct, circumstantial or statistical facts suggesting Defendant terminated his employment for discriminatory reasons. (Doc. No. 31 at 21–24.)

■ Ohio Revised Code § 4112.02(A) provides that:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

Ohio Rev.Code § 4112.02(A). To establish a *prima facie* case of employment discrimination under this statute, Plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for his position; (3) suffered an adverse employment action; and, (4) was replaced by someone outside of the protected class. *See Valentine v. Westshore Primary Care Assoc.*, 2008 WL 4078440 at *9 (Ohio App. 8th Dist. Sept. 4, 2008); *Howard v. Contech Const. Products, Inc.*, 2003 WL 22887954 at *3 (Ohio App. 12th Dist. Dec. 8, 2003). Where the allegations of discrimination arise from a workforce reduction, "the fourth requirement is modified so that the plaintiff must also demonstrate some 'direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir.1993) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990)). *See also Campbell v. PMI Food Equipment Group, Inc.*, 509 F.3d 776, 785 (6th Cir.2007).

■ Here, Plaintiff alleges he is African–American and was qualified for his position. (Doc. No. 1 at ¶¶ 9, 18–21.) He further claims "defendant terminated plaintiff by way of job abolishment on June 30, 2010, while maintaining the job duties

of the abolished position for a 'handpicked' junior white employee (Doug DeVito) to the present." *Id.* at ¶ 32. He asserts Mr. DeVito "could not occupy the position of District Special Education Specialist by virtue of department seniority or continuous-seniority in the absence of unfair labor practices by defendant." *Id.* at ¶ 33. Plaintiff then claims Defendant "used job abolishment as [a] pretense to specifically target plaintiff." *Id.* at ¶ 34.

Additionally, the Complaint sets forth a detailed statistical analysis of the positions eliminated in Plaintiff's department and argues this analysis constitutes "proof that the observed disparity between black non-teaching staff retention and non-black non-teaching staff retention in Pupil Services at Mansfield City Schools (defendant) were not due to chance." *Id.* at ¶ 149. Specifically, Plaintiff alleges that, at the time of the RIF, he worked in the Pupil Services Department, which consisted of 44 non-teaching staff members. *Id.* at ¶ 126. He claims, of these 44 staff members, 40 were "nonblacks" and four were African–American. *Id.* at ¶ 127. Plaintiff alleges the RIF abolished four positions from his department, three of which were held by African–Americans. *Id.* at ¶ 128. After setting forth a statistical analysis, the Complaint alleges that "the proportion of black nonteaching staff retained in Pupil Services is more than two standard deviations below the proportion of the total nonteaching staff population (e.g., black plus non-black pupil services staff) retained." *Id.* at ¶ 135. Thus, Plaintiff claims the RIF was nothing more than a "subterfuge to discriminate" against him. *Id.* at ¶ 36.

The Court rejects Defendant's argument that Plaintiff's claim should be dismissed because he fails to allege direct, indirect or statistical facts showing his employment was terminated for discriminatory reasons.

(Doc. No. 31 at 24.) In *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012), a defendant similarly argued that a plaintiff failed to sufficiently plead a *prima facie* Title VII claim because she had not alleged sufficient facts to show an intent to discriminate. In that case, the Sixth Circuit ruled:

> The district court's requirement that Keys's complaint establish a *prima facie* case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent. In *Swierkiewicz v. Sorema*, the Supreme Court unanimously held that the *prima facie* case under *McDonnell Douglas* is an evidentiary standard, not a pleading requirement. 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). As the Court reasoned, "it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." *Id.* at 511, 122 S.Ct. 992. The Court explained that the precise requirements of a *prima facie* case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. *Id.* at 512, 122 S.Ct. 992. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims. *Id.* at 511–12, 122 S.Ct. 992. The Supreme Court concluded that the ordinary rules of notice pleading apply and upheld the complaint because it gave "fair notice" of the basis of the plaintiff's claims. *Id.* at 514, 122 S.Ct. 992.

*Keys*, 684 F.3d at 609. *See also Crowder v. Railcrew Xpress*, 557 Fed.Appx. 487, 492–492 (6th Cir.2014). The Sixth Circuit

further noted that neither *Twombly* nor *Iqbal* undermined the holding of *Swierkiewicz*. *Keys*, 684 F.3d at 609. In the instant case, discovery could result in direct evidence of discriminatory intent, circumstantial evidence of discrimination, or it could produce neither. *"Twombly* and *Iqbal* merely established a 'plausibility' standard and do not require plaintiffs to make specific allegations they could not in good faith support without discovery." *Wallace v. MetroHealth System*, 2013 WL 5733705 at *11 (N.D.Ohio Oct. 22, 2013).

Based on the above, the Court finds Plaintiff has pled sufficient facts to state a plausible claim for employment discrimination under Ohio Rev.Code § 4112.02. Accordingly, the Court recommends Defendant's Motion for Judgment on the Pleadings be denied with respect to this claim.

### b. Retaliation

Defendant argues it is entitled to judgment on the pleadings with respect to Plaintiff's state law retaliation claim because Plaintiff fails to allege his EEOC, SERB, or OCRC filings "were mentioned by anyone involved in the hiring process, or even that any such staff member knew about these charges." (Doc. No. 31 at 25.) Defendant also claims Plaintiff's credentials do not qualify him to teach and that "[n]o matter how much coursework Shoemake has completed or what substitute and administrative certifications he holds, the District cannot hire teachers without a teaching license." *Id.*

■■■ A plaintiff presents a *prima facie* case of retaliation by establishing that: (1) he engaged in protected activity; (2) the employer knew of this protected activity; (3) the employer then took adverse action against the plaintiff; and, (4) there was a causal connection between the protected activity and the adverse action. *A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir.2013) (citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.2001)). Nonetheless, "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.* (quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). *See also Wallace*, 2013 WL 5739705 at *11.

■■■ Here, Plaintiff alleges he engaged in protected activity by (1) filing charges of discrimination with the EEOC, OCRC, and SERB; and, (2) complaining about incidents where the school district treasurer wore a Confederate soldier uniform. (Doc. No. 1 at ¶¶ 42–43, 57–58, 60.) It can certainly be inferred that Defendant was aware of Plaintiff's complaints regarding the Confederate soldier uniform. Moreover, and contrary to Defendant's argument, the Complaint does specifically allege that Defendant was aware Plaintiff had filed administrative charges of discrimination and retaliation. *Id.* at ¶ 59. Further, Plaintiff specifically (and repeatedly) alleges Defendant failed to rehire him in retaliation for engaging in this conduct. *See e.g., Id.* at ¶¶ 57–85.

Finally, the Court finds Plaintiff has sufficiently alleged there was a causal connection between the protected activity and the adverse action. Plaintiff need not identify with great precision the causal connection at this early stage. As noted above, "[w]hile *Twombly* changed the pleading requirements in federal actions, it does not require a plaintiff to completely develop his or her case prior to the commencement of discovery." *Wallace*, 2013 WL 5739705 at *11. Reading the Complaint as a whole, the Court finds Plaintiff has sufficiently pled a state law claim for retaliation based on Defendant's alleged refusal to rehire him as a result of his administrative filings

and complaints regarding the Confederate soldier uniform incidents.

### c. Hostile Work Environment

Defendant argues it is entitled to judgment on the pleadings with respect to Plaintiff's hostile work environment claim because the entire claim is based on the allegation that "the District treasurer wore a Confederate Soldier costume on several occasions." (Doc. No. 31 at 26.) Defendant argues this is insufficient to plausibly allege harassment "much less racial harassment that created an intimidating and hostile environment that interfered with his work performance." *Id.*

"To prove a hostile working environment claim based on race, the plaintiff must establish: (1) the employee was a member of the protected class; (2) the harassment of the employee was unwelcome; (3) the harassment complained of was based on race; (4) the harassment had the effect or purpose of unreasonably interfering with the employee's work performance or of creating an intimidating, hostile, or offensive work environment; and (5) respondeat superior (employer) liability." *Smith v. Superior Production, L.L.C.*, 13 N.E.3d 664, 675 (Ohio App. 10th Dist.) (citing *Zacchaeus v. Mt. Carmel Health Sys.*, 2002 WL 171550 at *2 (Ohio App. 10th Dist. Feb. 5, 2002); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The fourth prong that the working environment was sufficiently hostile requires looking at all of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and, (4) whether it unreasonably interferes with the employee's work performance. *See Zacchaeus*, 2002 WL 1711550 at *3; *Smith*, 13 N.E.3d at 675. "Determining whether an environment is sufficiently hostile or abusive, re-quires consideration of all the circumstances, not any one factor." *Smith*, 13 N.E.3d at 675.

Here, Plaintiff expressly alleges he was "subjected to an intimidating and hostile environment on account of race while employed by defendant." (Doc. No. 1 at ¶ 41.) Specifically, he alleges that "[t]he school district treasurer wore a Confederate soldier uniform on multiple occasions, which he should have known would be offensive and degrading to plaintiff and other black employees of southern heritage (e.g. Lillie P. Shelby, black female whose father was lynched by Ku Klux Klan members in Mississippi)." *Id.* at ¶ 42.

The Court finds the above factual allegations are sufficient to plead a hostile work environment claim under state law. Plaintiff alleges he is a member of a protected class · and was subject to unwelcome harassment in the form of witnessing the District treasurer wearing a Confederate soldier uniform on "multiple occasions." Whether this alleged harassment was sufficiently hostile under Ohio law remains to be developed in discovery. Accordingly, it is recommended Defendant's Motion for Judgment on the Pleadings be denied with respect to Plaintiff's hostile work environment claim.

### d. Disparate Impact

Defendant argues it is entitled to judgment on the pleadings with respect to Plaintiff's disparate impact claim as Plaintiff "alleges he was mistreated because of his race, not that a facially neutral policy led to his troubles." (Doc. No. 31 at 26.) Defendant further maintains Plaintiff's statistical analyses do not support his disparate impact claim because they are limited to one segment of the workforce; i.e., the Pupil Services Department. *Id.* at 27.

"Disparate impact discrimination involves employment practices that are facially neutral in their treatment of different groups, but fall more harshly on one group." *Brown v. Worthington Steel, Inc.,* 2005 WL 2100626 at *2 (Ohio App. 10th Dist. Sept. 1, 2005). "Proof of discriminatory motive is not required under this theory of discrimination." *Albaugh v. Columbus, Div. of Police,* 2003 WL 1353081 at *2 (Ohio App. 10th Dist. March 20, 2003). To establish a *prima facie* case of disparate impact, a plaintiff must: (1) identify the "particular employment practice;" (2) show a disparate impact on a protected group; and, (3) prove the employment practice caused the disparity. *Miller v. Potash Corp. of Saskatchewan, Inc.,* 2010 WL 3529248 at *12 (Ohio App. 3rd Dist. Sept. 13, 2010) (citing *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 128 S.Ct. 2395, 2405, 171 L.Ed.2d 283 (2008)).

Here, the Complaint set forth a series of statistical analyses designed to demonstrate that the RIF had a "disparate impact on black nonteaching staff in the defendant's department of Pupil Services." (Doc. No. 1 at ¶¶ 146, 124–149.) While Defendant argues the statistical analysis contained in the Complaint fails to demonstrate disparate impact because it is limited to the Pupil Services Department, the Court finds Plaintiff need not set forth his entire statistical theory in the Complaint in order to survive dismissal under Rule 12(c). As has been noted previously, *Twombly* "does not require a plaintiff to completely develop his or her case prior to the commencement of discovery." *Wallace,* 2013 WL 5739705 at *11. Reading the Complaint as a whole, the Court finds Plaintiff has sufficiently pled a claim of disparate impact to survive dismissal under Rule 12(c). It is therefore recommended Defendant's Motion for Judgment on the Pleadings be denied with respect to this claim.

**e. Statutory Contract Claims**

Defendant argues it is entitled to judgment on the pleadings with respect to what it describes as Plaintiff's "statutory contract claims" under Ohio Revised Code §§ 3319.17 and 3319.171. (Doc. No. 31 at 27–29.) Defendant first argues Plaintiff does not have a "continuing contract" and "therefore had no expectation of continued employment and no recall rights" under Ohio Rev.Code § 3319.17. *Id.* at 28. Defendant then asserts Plaintiff fails to state a claim for violations of Ohio Rev.Code § 3319.171 because he fails to allege he was employed as an "administrator" when Defendant's administrative personnel suspension policy was developed and, therefore, was not entitled to provide input into the development of that policy. Defendant further maintains Plaintiff's claims under that statute fail because "he does not describe the policy content or plausibly allege that the District failed to follow its policy in terminating his employment." *Id.* at 29.

Ohio Revised Code § 3319.17 (entitled "Reduction in number of teachers; restoration") provides, in pertinent part, as follows:

(B) When, for any of the following reasons that apply to any city, exempted village, local, or joint vocational school district or any educational service center, the board decides that it will be necessary to reduce the number of teachers it employs, it may make a reasonable reduction:

(1) In the case of any district or service center, return to duty of regular teachers after leaves of absence including suspension of schools, territorial changes affecting the district or center, or financial reasons;

* * *

(C) In making any such reduction, any city, exempted village, local, or joint vocational school board shall proceed to suspend contracts in accordance with the recommendation of the superintendent of schools who **shall, within each teaching field affected, give preference to teachers on continuing contracts.** The board shall not give preference to any teacher based on seniority, except when making a decision between teachers who have comparable evaluations.

\* \* \*

**The teachers whose continuing contracts are suspended by any board pursuant to this section shall have the right of restoration to continuing service status by that board if and when teaching positions become vacant or are created for which any of such teachers are or become qualified.** No teacher whose continuing contract has been suspended pursuant to this section shall lose that right of restoration to continuing service status by reason of having declined recall to a position that is less than full-time or, if the teacher was not employed full-time just prior to suspension of the teacher's continuing contract, to a position requiring a lesser percentage of full-time employment than the position the teacher last held while employed in the district or service center. Seniority shall not be the basis for rehiring a teacher, except when making a decision between teachers who have comparable evaluations.

Ohio Rev.Code § 3319.17 (emphasis added). Section 3319.171 (entitled "Administrative personnel suspension policy") provides:

A) Notwithstanding section 3319.17 of the Revised Code, the board of education of a city, local, exempted village, or joint vocational school district or the governing board of an educational service center may adopt an administrative personnel suspension policy governing the suspension of any contract of employment entered into by a board under section 3319.02 of the Revised Code. **If a board adopts a policy under this section, no contract entered into by a board under section 3319.02 of the Revised Code may be suspended except pursuant to the policy.** If a board does not adopt such a policy, no such contract may be suspended by a board except pursuant to section 3319.17 of the Revised Code.

(B) The administrative personnel suspension policy shall include, but not be limited to, all of the following:

(1) One or more reasons that a board may consider for suspending any contract of employment entered into under section 3319.02 of the Revised Code. A reason for such suspension may include the financial conditions of the school district or educational service center.

(2) Procedures for determining the order of suspension of contracts within the employment service areas affected;

(3) **Provisions requiring a right of restoration for employees whose contracts of employment are suspended under the policy if and when any positions become vacant or are created for which any of them are or become qualified.**

(C) **The policy procedures and provisions adopted under divisions (B)(2) and (3) of this section shall be developed by the board of a district or service center with input from** the superintendent and all assistant superintendents, principals, assistant principals, and **other administrators** employed by that board under section 3319.02 of the Revised Code.

Ohio Rev.Code § 3319.171 (emphasis added). The term "other administrators" is defined in Ohio Rev.Code § 3319.02 as follows: "any employee in a position for which a board of education requires a license designated by rule of the department of education for being an administrator issued under section 3319.22 of the Revised Code, including a professional pupil services employee or administrative specialist or an equivalent of either one who is not employed as a school counselor and spends less than fifty per cent of the time employed teaching or working with students." Ohio Rev.Code § 3319.02(A)(1)(a).

■ As an initial matter, the Court does not construe the Complaint as stating a claim for relief under Ohio Rev.Code § 3319.17. Indeed, the Complaint acknowledges Plaintiff did not have a continuing contract and alleges instead that he was a nonsupervisory, nonteaching, "other administrator" during the relevant time period. (Doc. No. 1 at ¶¶ 16, 23.) As such, Plaintiff alleges he was covered by an administrative personnel suspension policy adopted by Defendant pursuant to Ohio Rev.Code § 3319.171. He claims Defendant violated that statute (and the policy itself) by denying him (1) input into the development of the policy; and, (2) an evaluation and/or hearing prior to termination. (Doc. No. 1 at ¶¶ 30, 88–90, 112.) Plaintiff also claims he was entitled to restoration rights under the Board's suspension policy and that Defendant violated that right by failing to place him on its "Recall List" or otherwise restore him to employment. (Doc. No. 1 at ¶¶ 65, 82, 98.)

Based on the above, the Court recommends Defendant's Motion for Judgment on the Pleadings with respect to claims under Ohio Rev.Code § 3319.17 be denied as moot because the Court does not construe the Complaint as, in fact, raising such claims. Moreover, it is not entirely clear the Complaint intends to state an independent cause of action for Defendant's alleged violations of Ohio Rev.Code § 3319.171. Rather, it appears the Complaint asserts that Defendant's alleged failure to comply with that statute (and the administrative personnel suspension policy alleged adopted pursuant to thereto) violated his federal due process rights.[18] In light of Plaintiff's *pro se* status, and giving the Complaint a liberal construction, the Court will assume for purposes of this Report & Recommendation that the Complaint does, in fact, assert independent claims for violations of Ohio Rev.Code § 3319.171 and the Board's administrative personnel suspension policy.

■ With respect to these claims, the Court finds dismissal is not appropriate at this time. Construed liberally, the Complaint alleges that (1) Defendant adopted an administrative personnel suspension policy pursuant to Ohio Rev.Code § 3319.171; (2) Plaintiff was subject to that policy; (3) the policy accorded him certain restoration and due process rights including the right to be placed on Defendant's "Recall List," and the right to an evaluation or hearing prior to termination; and, (4) Defendant violated that policy by failing to accord Plaintiff those rights. (Doc. No. 1 at ¶¶ 30–31, 64–65, 82–98, 102, 112, 119–120.) While Defendant argues Plaintiff did not have such rights under its

18. The Complaint is, at times, difficult to understand as it does not always clearly articulate which claims are being asserted under which legal theories. However, it appears Plaintiff's breach of contract claims relate to

Defendant's alleged failure to pay him for unused vacation and sick leave. (Doc. No. 1 at ¶¶ 46–54.) Defendant does not move for judgment with respect to these claims.

policy, the Court cannot make that determination at this time. The Board's policy is not before the Court and, therefore, the Court cannot reasonably determine whether Plaintiff was subject to that policy and, if so, what his rights were thereunder. Discovery may or may not ultimately support Plaintiff's claims, but the Court finds the allegations in the Complaint are sufficient to withstand judgment on the pleadings under Rule 12(c).

Accordingly, the Court recommends Defendant's Motion for Judgment on the Pleadings with respect to Plaintiff's claims under Ohio Rev.Code § 3319.171 be denied.

## C. Motion to Dismiss for Lack of Subject Matter Jurisdiction

### 1. Standard of Review

Fed.R.Civ.P. 12(b)(1) states in pertinent part that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter...." Fed.R.Civ.P. 12(b)(1). When challenged on a motion to dismiss pursuant to this Rule, it is the plaintiff's burden to prove the existence of subject matter jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986). Such challenges are brought by two different methods: (1) facial attacks; and (2) factual attacks. *See, e.g., United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994); *International Union of Operating Engineers, Local 18 v. Laborers' Intern. Union of North America*, 2013 WL 5430412 at * 2 (N.D.Ohio Sept. 26, 2013).

"A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material

allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Walters v. Leavitt*, 376 F.Supp.2d 746, 752 (E.D.Mich.2005). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, .... and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. But the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings." *Id.* at 752 (citation omitted).

### 2. Review of OCRC decision

■ Defendant argues that, to the extent Plaintiff asks this Court to review the October 13, 2013 decision of the OCRC dismissing his charges, this Court lacks subject matter jurisdiction to do so. (Doc. No. 31 at 15–17.) Specifically, Defendant maintains Ohio law provides that an OCRC decision may only be appealed to the state court of common pleas and "[a]ppeals to any other court are simply impermissible." *Id.* at 16.

In *Walker v. Cognis Oleo Chemical, LLC*, 2008 WL 2705190 (S.D.Ohio July 9, 2008), the district court found it lacked jurisdiction to consider Plaintiff's attempt to challenge the findings of an OCRC "no probable cause" decision. The court explained as follows:

> The Ohio Revised Code states that "any complainant, or respondent claiming to be aggrieved by a final order of the commission, including a refusal to issue a complaint, may obtain judicial review thereof ... in a proceeding ... brought in the common pleas court of the state

... wherein the unlawful discriminatory practice which is the subject of the commission's order was committed...." O.R.C. § 4112.06(A). Furthermore, the Code states that "the court shall be exclusive and its judgment and order shall be final subject to appellate review." O.R.C. § 4112.06(F). Moreover, the courts have held that "the court of common pleas has exclusive jurisdiction to modify, set aside, or enforce the order of the Commission." *See Ingram v. OCRC,* 67 Ohio App.3d 648, 588 N.E.2d 162, 163 (1990). *See Also, Ohio Civil Rights Comm'n v. Ingram,* 69 Ohio St.3d 89, 630 N.E.2d 669, 672 (1994).

When a state provides for administrative agency review of an appellate nature, federal district courts have neither original jurisdiction nor removal jurisdiction over the review proceedings. *Shamrock Motors v. Ford Motor Co.,* 120 F.3d 196, 200 (9th Cir.1997). Moreover, "federal courts have no general appellate authority over state courts or state agencies." *Hameetman v. City of Chicago,* 776 F.2d 636, 640 (7th Cir.1985). Under Ohio law, the court of common pleas has exclusive jurisdiction over appeals of the commission's decisions, to modify, set aside, or enforce the order of the commission. Plaintiff's appropriate course of action, therefore, was to appeal the commission's decision to the common pleas court. Because he failed to do so and Ohio provides for administrative agency review of an appellate nature, federal district courts have neither original jurisdiction nor removal jurisdiction over the review proceedings.

*Cognis,* 2008 WL 2705190 at *8–9. *See also Hayner v. City of Washington Court House,* 2007 WL 38136 at *3–4 (S.D.Ohio Jan. 4, 2007); *Gilbert v. Correction Reception Center,* 2008 WL 4347231 at *7 (S.D.Ohio Sept. 19, 2008).

The Court agrees with the above reasoning. Accordingly, to the extent the Complaint asks this Court to review or modify the decision of the OCRC finding no probable cause, subject matter jurisdiction is lacking. The Court, therefore, recommends that any claims in the Complaint purporting to challenge or appeal the decision of the OCRC be dismissed for lack of subject matter jurisdiction.

### 3. Ohio Rev.Code § 4117

Defendant next argues that the State Employment Relations Board ("SERB") retains exclusive jurisdiction over Plaintiff's unfair labor practice charges and the decision by SERB to dismiss Plaintiff's charge "is not appealable even to a [state] court of common pleas, much less to a federal tribunal." (Doc. No. 31 at 16–17.) Therefore, Defendant maintains this Court "lacks jurisdiction and should dismiss each and every allegation relating to O.R.C. § 4117, collective bargaining, or unfair labor practices." *Id.* at 17.

Ohio courts have held that the SERB has exclusive primary jurisdiction to resolve unfair labor practice charges alleging violations of Ohio Rev.Code Chapter 4117. In *State ex rel. Ohio Dept. of Mental Health v. Nadel,* 98 Ohio St.3d 405, 786 N.E.2d 49, 54 (Ohio 2003), the Ohio Supreme Court found that.

> Exclusive jurisdiction to resolve unfair labor practice charges is vested in SERB in two general areas: (1) where one of the parties filed charges with SERB alleging an unfair labor practice under R.C. 4117.11 and (2) where a complaint brought before the common pleas court alleges conduct specifically enumerated in R.C. 4117.11.

*Id.* (citation omitted). *See also Franklin Cnty. Law Enforcement Ass'n v. Fraternal Order of Police,* 59 Ohio St.3d 167, 572 N.E.2d 87 (1991).

As another Judge within this District has observed, however, "[t]he Sixth Circuit recently stated that the SERB maintains exclusive, 'primary' jurisdiction for unfair labor practice disputes; and, thereafter, an appellant 'may only seek relief from the courts *after* he or she has exhausted the administrative remedy provided through SERB.'" *Gurish v. Ohio Dept. of Mental Retardation and Developmental Disabilities,* 2012 WL 2931357 at *14 (N.D.Ohio July 18, 2012) (Pearson, J.) (citing *Zafirau v. Cleveland Municipal School Dist.,* 448 Fed.Appx. 531, 536–37 (6th Cir.2011) and *Shamrock v. Trumbull Cnty. Comm'rs,* 71 Ohio App.3d 54, 593 N.E.2d 28, 30–31 (1990)) (emphasis in original).

In *Gurish,* the court denied the defendant union's motion to dismiss plaintiff's claims under Ohio Revised Code Chapter 4117 for lack of subject matter jurisdiction where the plaintiff had filed an unfair labor practice charge with the SERB and that agency had dismissed plaintiff's charge for lack of probable cause. *Gurish,* 2012 WL 2931357 at *14–15. Moreover, other district courts within this Circuit have recognized that SERB has primary *initial* jurisdiction over unfair labor practices and that plaintiffs must exhaust his or her administrative remedies with that agency before filing suit in state or federal court.[19] *See e.g. Hayner v. City of Washington Court House,* 2007 WL 38137 at *3 (S.D.Ohio Jan. 4, 2007) (finding that "SERB exercises exclusive *initial* jurisdiction over disputes brought by public employees alleging unfair labor practices by a union as defined by Ohio Rev.Code § 4117" and, therefore, "[j]urisdiction over the rights of public employees properly

rests *initially* with SERB, and Plaintiff must exhaust her state remedies *before* seeking redress in this Court") (emphasis added); *Featherstone v. Columbus Public Schools,* 39 F.Supp.2d 1020, 1025 (S.D.Ohio 1999) (same); *Bero v. Eastern Knox County Joint Fire Dist.,* 2011 WL 5119459 at *3 (S.D.Ohio Oct. 27, 2011).

Here, Plaintiff claims he filed a charge with the SERB alleging unfair labor practices by the Defendant and received a decision dismissing that charge on January 31, 2013. (Doc. No. 1–1 at 9.) Plaintiff does not attach a copy of his SERB charge to the Complaint and the precise nature of his unfair labor practice claims is unclear. Moreover, while it appears from the SERB's decision letter that an investigation was conducted into Plaintiff's charge, the nature and scope of this investigation is not evident from the pleadings.

Initially, the Court notes that, to the extent Plaintiff's SERB charge alleged unfair labor practices independent of Chapter 4117 (such as alleged civil rights violations), the Court retains jurisdiction to consider such claims in the context of Plaintiff's remaining civil rights claims. *See Keller v. Columbus,* 100 Ohio St.3d 192, 195, 797 N.E.2d 964 (Ohio 2003) (finding that "SERB does not have exclusive jurisdiction over every claim that can somehow be cast in terms of an unfair labor practice" and that claims "independent of R.C. Chapter 4117" are not within the exclusive jurisdiction of SERB); *Gilbert v. Correction Reception Center,* 2008 WL 4347231 at *7–8 (S.D.Ohio Sept. 19, 2008) (finding that, to the extent the Complaint could be construed as alleging de-

---

19. Ohio Rev.Code § 4117.13(D) provides a mechanism for judicial review of final orders issued by SERB. See Ohio Rev.Code § 4117.13(D) (providing that "[a]ny person aggrieved by any final order of the board granting or denying, in whole or in part, the

relief sought may appeal to the court of common pleas of any county where the unfair labor practice in question was alleged to have been engaged in … by filing in the court a notice of appeal setting forth the order appealed from and the grounds of appeal").

fendant union violated Title VII by treating plaintiff less favorably that white union members, SERB does not have exclusive jurisdiction over such claims).

To the extent Plaintiff's SERB charge alleged unfair labor practices falling within the ambit of Ohio Rev.Code Chapter 4117, the Court cannot find at this stage of the proceedings that subject matter jurisdiction is lacking. In this regard, the Court notes that Defendant's argument on this issue consists entirely of six sentences. (Doc. No. 31 at 16–17.) Defendant does not address the Sixth Circuit's recent decision in *Zafirau*, which seems to imply a plaintiff's ability to seek judicial review of Chapter 4117 claims after exhausting his or her administrative remedies with SERB. Nor does Defendant address *Gurish*, which denied a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction where (as here) the plaintiff filed an unfair labor practice charge with SERB and received a letter from the agency dismissing the charge. Defendant also failed to direct this Court's attention to the fact that Ohio Rev.Code § 4117.13(D) provides for judicial review of SERB decisions under certain circumstances.

Instead, relying on two state court decisions from the late 1980's and early 1990's, Defendant states summarily that "even courts of common pleas decline to review appeals when SERB refuses to find probable cause that an unfair labor practice occurred." (Doc. No. 31 at 16.) Upon review of those cases, it appears Defendant's argument is that SERB's adjudication of Plaintiff's charge is not subject to judicial review in any court (state or federal) because it did not constitute an "quasi-judicial adjudication" subject to judicial review. *See Ohio Ass'n of Public School Employees, AFSCME/AFL–CIO v. Dayton City School District Bd. of Education,* 1991 WL 227298 at *2 (Ohio App. 2nd

Dist.1991). However, as noted above, the nature and scope of SERB's investigation of Plaintiff's charge is not clear from the face of the pleading and, thus, the Court cannot determine at this stage whether the SERB's investigation in this case constituted an "adjudication" subject to judicial review under Ohio law.

Accordingly, and for all the reasons set forth above, the Court recommends Defendant's Motion to Dismiss Plaintiff's Chapter 4117 claims for lack of subject matter jurisdiction be denied without prejudice. Defendant is not prohibited from moving to dismiss these charges once the factual record regarding Plaintiff's SERB charge is more fully developed.

## D. Writ of Mandamus

In Count Six of the Complaint, Plaintiff asks this Court to issue a writ of mandamus compelling Defendant to reinstate him and pay back pay and benefits. (Doc. No. 1 at ¶ 178.) He also asks the Court to "remand the case for consideration to the Office of the Attorney General for litigation on grounds defendant has caused irreconcilable harm against plaintiff under the Ohio and United States Constitutions on counts of violations to race, equal contract rights, due process and equal protection guarantees, and violation of Title 18 U.S.C. § 1001 for willfully lying to a federal investigator." *Id.* at ¶ 189.

Defendant argues Plaintiff is not entitled to a writ of mandamus or remand because he has no clear legal right to the relief requested. (Doc. No. 31 at 29–30.)

 A writ of mandamus is an extraordinary remedy, thus "a party seeking such a writ usually must satisfy two conditions: (1) that there are no other adequate means for the party to obtain the desired relief, and (2) that the party has a 'clear and indisputable' right to issuance of the

writ." *Golden v. Kelsey–Hayes Co.*, 73 F.3d 648, 658 (6th Cir.1996) (quoting *Allied Chem. Corp. v. Daiflon Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam)). *See also State ex rel. Skaggs v. Brunner*, 588 F.Supp.2d 828, 833 (S.D.Ohio 2008); *Woolf v. City of Streetsboro*, 2010 WL 4105550 at *16 (N.D.Ohio Oct. 18, 2010). Moreover, "[a] federal court cannot issue a writ of mandamus that compels state officials to comply with state law." *Brunner*, 588 F.Supp.2d at 833 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

Plaintiff has not met either of the requirements for obtaining such a writ; i.e., that there are no other adequate means for him to obtain reinstatement/back pay; and a clear and indisputable right to the relief requested. Moreover, Plaintiff has not directed this Court's attention to any legal precedent suggesting this Court has the authority to remand the case to the Ohio Attorney General's Office for investigation. Accordingly, the Court recommends Plaintiff's requests for a writ of mandamus and remand to the Ohio Attorney General's Office be denied.

## IV. Conclusion

For the reasons set forth above, Defendant's Motions to Strike (Doc. Nos. 38, 40) and Plaintiff's "Motion for Defendant to Withdraw Offending Claims" (Doc. No. 37) are DENIED.

In addition, the Court recommends that Defendant's Motion for Judgment on the Pleadings and to Dismiss for Lack of Subject Matter Jurisdiction be GRANTED IN PART and DENIED IN PART as follows. It is recommended that Defendant's Motion be granted with respect to:

- Plaintiff's claims under 42 U.S.C. § 1981; Title VII; and, 18 U.S.C. § 1001; and,

- Plaintiff's claims under 42 U.S.C. § 1983 that relate to his June 30, 2010 termination and any alleged acts of retaliation occurring before November 12, 2011.

It is further recommended that Defendant's Motion for Judgment on the Pleadings be denied with respect to the following claims:

- Plaintiff's § 1983 claims for retaliation occurring within two years of the filing of the Complaint (i.e. subsequent to November 12, 2011).

- Plaintiff's state law claims for discrimination, retaliation, hostile work environment, and disparate impact; and,

- Plaintiff's claims under Ohio Rev. Code § 3319.171.

In addition, it is recommended that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction be (1) granted with respect to Plaintiff's request that this Court review the October 2013 decision of the OCRC; and (2) denied without prejudice with respect to Plaintiff's claims under Ohio Rev.Code Chapter 4117.

Finally, it is recommended that Plaintiff's requests for a writ of mandamus and remand to the Office of the Ohio Attorney General be denied.

Date: *September 15, 2014.*